Case 3:23-cv-02224-E   Document 1-3   Filed 10/06/23   Page 1 of 14   PageID 24

# EXHIBIT A-2

Case 3:23-cv-02224-E   Document 1-3   Filed 10/06/23   Page 2 of 14   PageID 25

FILED
12/20/2022 3:13 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Ashley Davenport DEPUTY

**1 CIT ESERVE**
**JURY DEMAND**

DC-22-17459

CAUSE NO. _____

| | | |
|---|---|---|
| **D. REYNOLDS, LP** | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff | § | |
| | § | 160th |
| v. | § | _____JUDICIAL DISTRICT |
| | § | |
| **AGCS MARINE INSURANCE COMPANY** | § | |
| | § | |
| | § | |
| Defendant | § | DALLAS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, D. Reynolds, LP, files this original petition against Defendant, AGCS Marine Insurance Company, in which Plaintiff seeks monetary relief of over $1,000,000. In support of this petition, Plaintiff will show this honorable court as follows:

### I. Parties, Venue, and Discovery Level

Plaintiff, D. Reynolds, LP, (hereinafter "Reynolds"), is a Texas limited partnership and the named insured that owns the property located at 12900 Senlac Drive, Farmers Branch, Texas 75234.

Defendant, AGCS Marine Insurance Company (hereinafter "AGCS"), is a foreign insurance company doing business in Texas that can be served by serving its registered agent, C T Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 78231-3136.

The venue of this case is proper in Dallas County, Texas under Sections 15.002 and 15.032 of the Texas Civil Practices and Remedies Code and Section 17.56 of the Deceptive Trade Practices-Consumer Protection Act (hereafter the "DTPA").

Plaintiff intends to conduct discovery in this case under Level 3 pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

1

## II. Agency and Respondeat Superior

Whenever in this petition it is alleged that the Defendant did any act or thing, it is meant that Defendant or its agents, officers, servants, employees, or representatives did such act or thing. They were also done with the full authorization or ratification of Defendant or done in the normal routine, course and scope of the agency or employment of Defendant or its agents, officers, servants, employees, or representatives.

## III. Conditions Precedent

All conditions precedent to recovery have occurred or been performed. The giving of sixty days written statutory notice for this claim is rendered impracticable by reason of the necessity of filing suit at this time before the expiration of the statute of limitations applicable to this case.

## IV. Facts of the Case

Reynolds purchased property insurance from AGCS (Policy Number MXI-93077879) to cover losses to its commercial building at 12900 Senlac Drive, Farmers Branch, Texas 75234 for the policy period of July 28, 2017 to July 28, 2018. On or about June 6, 2018, during the subject policy period, a hail and windstorm caused substantial damage to Reynolds' building. On November 11, 2020, Reynolds reported this loss to AGCS and its agents, who assigned this loss the claim number of 40052598 with a date of loss of June 6, 2018.

On November 19, 2020, AGCS and its employee Ryan Bryson notified Reynolds that it was retaining building consultants to inspect and prepare a scope of damages for the hail damage to Reynolds' building. On December 3, 2020, Claudio Navia of CSF Consulting, LP (hereinafter "Navia"), Chris Horton of CAT Mechanical, LLC (hereinafter "Horton"), and Mrudool S. Patel of SUBCON USA, Inc. (hereinafter "Patel"), inspected the subject building. During this initial inspection, Navia observed hail damage to the building's rooftop HVAC units, metal roof fixtures, and parapet wall and its aluminum coating. Despite observing these damages, Navia erroneously determined that there was no hail damage to the building's modified bitumen

roofing system. Thereafter, Navia sought estimates from Horton and Patel for the cost to repair only the items that he considered were damaged.

Reynolds believes that AGCS hires adjusters and consultants like Bryce, Horton, Patel, and Navia because they are not objective and are biased for insurers. AGCS knows that they will provide AGCS with result-oriented reports and estimates on which AGCS can deny or under pay an insured's storm damage insurance claim. True to form, in a January 2, 2021 letter, Bryson provided Reynolds with Patel's and Horton's estimates totaling only $120,346.40 less $42,121.24 in recoverable depreciation and less the policy's $10,000 deductible, for an actual cash value amount of only $68,225.16. In the same letter, Bryson provided Reynolds with a final sworn proof of loss so he could swear to this amount as accurate and get paid. Bryson did not give Reynolds an option to sign a "partial proof of loss," but only a final proof of loss notating final payment. Reynolds did not sign the final proof of loss because it did not accurately reflect the amount of the loss to the building from the June 6, 2018 storm.

Thereafter, on January 29, 2021, Reynolds engaged a Texas licensed public insurance adjuster, Jason Lanier of J.A. Lanier & Associates, Inc. (hereinafter "Lanier"), to assist Reynolds with its storm damage insurance claim. Lanier retained an experienced roofing and storm damage consultant, Gary Treider of Chaparral Consulting and Forensics (hereinafter "Treider"), to inspect Reynolds' property and prepare a report on his findings.

On March 25, 2021, Lanier provided Bryson with Treider's report. In his report, Treider determined that the June 6, 2018 hail storm produced high volumes of irregularly shaped hail, which left spatter marks that measured up to three inches in diameter on the building's surfaces. Treider also noted that hailstones are typically one-third larger than the hail spatter diameters observed. Treider also cut roof samples, which showed damage in the form of interplay crush from hail impacts.

Based on his investigation, Treider concluded that the June 6, 2018 storm had caused significant hail damage to Reynolds' building, its roof, its roof top units ("RTU"), and its roofing

3

membranes. Treider also determined that there were multiple "pencil-lead" sized holes that were caused by irregular shaped hailstones with "jagged edges that can be described as spikes." In his report, Treider noted these pencil-lead holes could allow water to penetrate and seep into the building's roof and interiors. Treider additionally determined that there were significant dents to the 20-gauge steel AC cowlings and AC units caused by the June 6, 2018 hailstorm. As a result of Treider's findings, tests, and observations, he determined that the roof needed to be replaced to properly repair the hail damage from the June 6, 2018 storm.

On April 15, 2021, Lanier inspected Reynolds' property so he could prepare an estimate for repairs, in conjunction with Treider's report. In this estimate, Lanier documented substantial damage to the roof's "built-up 3 ply" roofing system, glass mat gypsum, insulation boards, gravel ballast, RTUs, flash parapets, cap flashing, gutters, and various electrical conduits that was caused by June 6, 2018 storm. Lanier determined that the proper cost to properly repair and restore the property to its pre-loss condition was $673,015.95, less recoverable depreciation of $22,564.05 and the policy's $10,000 deductible, for an actual cash value amount of $640,451.90. Lanier's estimate also included costs for commercial supervision, code upgrades, and overhead and profit as required by Texas law for a total claim amount of $1,002,521.61. On July 21, 2021, Lanier provided AGCS and Bryson with his estimate and a partial proof of loss for $1,002,521.61, less recoverable depreciation of $22,564.05, less the prior payment of $68,225.16, less the $329,505.66 in code upgrades to be paid once incurred, and less the policy's $10,000 deductible.

In a July 28, 2021 email, and as a tactic to delay and string-out the claim, Bryson notified Lanier that AGCS would be engaging the services of Colton Ingraham of Envista Forensics (hereinafter "Ingraham") to inspect the subject property. In a July 28, 2021 email response, Lanier informed Bryson that nearly four months ago, he had provided Bryson and AGCS with Treider's detailed report that clearly showed the June 6, 2018 storm had damaged the building and that roof needed to be replaced to properly repair that damage. In this same email, Lanier

4

also questioned why it had taken Bryson and AGCS nearly four months to engage an expert to re-inspect the roof. On the same day, Bryson emailed Lanier and inappropriately stated that he "needed the full claim presentation to determine our course of action"—even though AGCS and Bryson had already been provided with everything it needed to pay the claim in full.

On August 5, 2021, Ingraham met with Lanier and inspected the building and its roof. During this inspection, Ingraham found hail dents on multiple RTU's, indentations on RTU's condenser fins in multiple locations, and discernable indentations on various roof appurtenances. Ingraham then determined that recent hail of up to one and one-half inches in diameter had damaged Reynolds' property. Despite this finding, in an August 24, 2021 report, Ingraham erroneously concluded (consistent with his bias for insurers): (1) that the ballasted built-up roof membranes on Reynolds' roof were not damaged by hailstone impacts; and (2) that the leaks at various locations were not caused by the subject storm, but were due to deferred maintenance, which Ingraham knows is not covered under the insured's policy with AGCS.

In a September 27, 2021 letter, Bryson notified Lanier that AGCS would be retaining an additional engineer, Marco DeLeon of Nelson Forensics (hereinafter "DeLeon") to conduct a re-inspection of the subject property. Bryson also informed Lanier that he would be retaining a meteorologist, Howard Altschule of Forensic Weather Consultants, to do a meteorological investigation.

On November 2 and 5, 2021 and February 17-18, 2021, DeLeon inspected the subject property. In his March 11, 2022 report, DeLeon agreed that a hail event on June 6, 2018 occurred and that hail of up to one and one-half inches impacted the subject property. Despite this finding, DeLeon erroneously concluded (1) that only the RTU's sustained significant hail damage; and (2) that the modified roofing membrane had not been damaged by hail impacts. Again, Reynolds believes that AGCS purposely retains engineers such as Ingraham and DeLeon because it knows that they are biased for insurers and will provide result-oriented reports so the insurer could low-ball Reynolds' claim.

In an April 6, 2022 letter, AGCS and Bryson maintained its erroneous coverage position that no hail damage occurred to the modified bitumen roof of the Reynolds' property. AGCS and Bryson then re-iterated that AGCS would not change its previous claim decision and that the only payment it believed to be valid was the $68,225.16, which was initially estimated by Navia.

Thereafter, in a May 3, 2022 letter, Lanier informed Bryson that Reynolds did not agree with the $68,225.16 amount in AGCS' final proof of loss because it was not correct. Lanier also stated that Reynolds was not given the option of completing a partial proof of loss. In this same letter, Lanier demanded that the Reynolds be paid in full for its valid hail damage claim based upon the insured's partial proof of loss, which was provided to AGCS and Bryson on July 21, 2021. To date, AGCS has refused to properly pay Reynolds the reasonable and necessary cost to repair and restore the subject property to its pre-loss condition and continues to rely upon its biased engineers, consultants, and experts' opinions that the roof of Reynolds' building was not damaged by the June 6, 2018 hailstorm.

As a result, Reynolds has incurred actual damages of approximately $1,002,521 less its $10,000 deductible and less AGCS' prior payment of $68,225.16 for a total amount of $911,732.45. It has also incurred the 11.25% per annum interest on those amounts as damages under Section 542.060 of the Texas Insurance Code and reasonable attorney's fees.

### V. Cause of Action for Breach of Contract

According to the insurance policy that Plaintiff purchased, AGCS and its agents had the duty to investigate and pay Plaintiff policy benefits for claims made for damages to Plaintiff's property caused by the June 6, 2018 hail and windstorm. The subject hail and windstorm caused substantial damage to Plaintiff's property, which is covered under Plaintiff's insurance policy with AGCS. Plaintiff fully performed under this contract and paid all its premiums for the promised coverage. Despite such performance, AGCS breached its contractual obligation and the subject insurance policy by failing to pay Plaintiff any policy benefits for the cost to repair the storm damage to Plaintiff's property from the June 6, 2018 storm. AGCS has also breached any

contractual provisions on timely investigating, adjusting, and paying Plaintiff's insurance claim. As a result of these breaches of contract, Plaintiff has suffered the damages that are described in this petition.

## VI.  Causes of Action for Violations of Chapter 542 of the Insurance Code

AGCS's conduct that is described in this petition violates Chapter 542 of the Texas Insurance Code (hereafter "the TPCCA"). Within 15 days after the receipt of actual and written notice of Plaintiff's storm damage insurance claim, (or by November 26, 2020) AGCS did not request from Plaintiff any items, statements, and forms that they reasonably believed at that it would be required from Plaintiff for the claim, as required under Section 542.055 of the TPCCA. As a result, Defendant has violated Section 542.056 of the TPCCA by failing to accept or reject Plaintiff's claim in writing within 15 business days after the initial period (by December 18, 2020) under Section 542.055 described above. AGCS has also violated Section 542.058 by failing to pay Plaintiff's claim within 60 days after the initial period (by January 25, 2021) under Section 542.055 described above. In the event it is determined that AGCS owes Plaintiff any additional monies, then AGCS has automatically violated Chapter 542 of the Texas Insurance Code, which a strict liability statute.

For these violations, AGCS owes Plaintiff the 11.25% per annum interest as damages under Section 542.060 of the Texas Insurance Code. Under Section 542.060, Plaintiff is also entitled to recover its reasonable and necessary attorney's fees against Defendant, which shall be taxed as part of the costs in the case.

## VII.  DTPA Causes of Action

Plaintiff incorporates all of the allegations in this petition for these causes of action against Defendant under the provisions of the DTPA. Plaintiff has met all conditions precedent to bringing these causes of action against Defendant. Specifically, Defendant's violations of the DTPA include, without limitation, the following matters:

7

A. By its acts, omissions, failures, and conduct that are described in this petition, AGCS and its employees, agents, and representatives have violated Sections 17.46(b)(5), (7), (12), and (20) of the DTPA. In this respect, Defendant's violations include, without limitation, (1) Defendant's unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim; (2) Defendant's failure to properly investigate Plaintiff's claim; (3) Defendant's hiring of and reliance upon bias adjusters and consultants to obtain favorable, result-oriented reports to assist Defendant in denying Plaintiff's insurance claim; (4) Defendant's misrepresentations that are described in this petition; and (5) Defendant's failure to pay for the proper repair of Plaintiff's property after Defendant's liability had become reasonably clear;

B. As described in this petition, AGCS and their agents represented to Plaintiff that the subject insurance policy, Defendant's adjusting and investigative services, and their numerous misrepresentations as described herein including the extent of damage to Plaintiff's property from the June 6, 2018 storm had characteristics or benefits that they did not have, which gives Plaintiff the right to recover under Section 17.46(b)(5) of the DTPA;

C. As described in this petition, AGCS and their agents represented to Plaintiff that the subject insurance policy, Defendant's adjusting and investigative services, and their numerous misrepresentations as described herein including the misrepresentation of the policy's deductible and the extent of damage to Plaintiff's property from the June 6, 2018 storm were of a particular standard, quality, or grade when it was of another in violation of Section 17.46(b)(7) of the DTPA;

D. As described in this petition, AGCS and their agents represented to Plaintiff that the subject insurance policy, Defendant's adjusting and investigative services, and their numerous misrepresentations as described herein including the misrepresentation of the policy's deductible and the extent of damage to Plaintiff's property from the June 6, 2018 storm conferred or involved rights, remedies, or obligations that they did not have, which gives Plaintiff the right to recover under Section 17.46 (b)(12) of the DTPA;

E. By representing that Defendant would pay to repair the damages caused by hail and windstorm and then not doing so, Defendant has violated Sections 17.46(b)(5), (7), and (12) of the DTPA;

F. Defendant has breached an express warranty that damage caused by hail and windstorms would be covered under the subject insurance policy. This breach entitles Plaintiff to recover under Sections 17.46(b)(12) and (20) and 17.50(a)(2) of the DTPA;

G. Defendant's actions and conduct, as described in this petition, are unconscionable in that it took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unconscionable conduct gives Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA; and

H. Defendant's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.50(a)(4) of the DTPA.

All of the above-described acts, omissions, and failures of AGCS and its agents are a producing cause of Plaintiff's damages that are described in this petition.

### VIII. Causes of Action for Unfair Insurance Practices

Plaintiff incorporates all of the allegations in this petition for these causes of action against AGCS, under the Texas Insurance Code. Plaintiff has satisfied all conditions precedent to bringing these causes of action. By its acts, omissions, failures, and conduct AGCS and its agents have engaged in unfair and deceptive acts or practices in the business of insurance in violation of Chapter 541 of the Texas Insurance Code. Such violations include, without limitation, all the conduct described in this petition plus Defendant's failure to properly and reasonably investigate Plaintiff's claim for damage from the June 6, 2018 storm. They also include Defendant's unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim from the June 6, 2018 storm, Defendant's failure to pay for the proper repair of Plaintiff's property on which their liability had become reasonably clear, and Defendant's numerous misrepresentations that are described in this petition. They further include Defendant's hiring of and reliance upon biased adjusters and consultants to obtain favorable, result-oriented reports to assist the insurer in denying Plaintiff's insurance claim from the June 6, 2018 storm, which also does not constitute a reasonable investigation. In addition, Defendant failed to look for coverage and give Plaintiff the benefit of the doubt. Specifically, AGCS and its agents are guilty of the following unfair insurance practices:

- A. Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case;

- B. Engaging in unfair claims settlement practices;

- C. Misrepresenting to Plaintiff pertinent facts or policy provisions relating to the coverage at issue;

- D. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim on which Defendant's liability had become reasonably clear;

- E. Failing to affirm or deny coverage of Plaintiff's claim within a reasonable time; and

  F. Refusing to properly pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim and by conducting a sham investigation that ignored and excluded damage from the subject storm.

AGCS has also breached the Texas Insurance Code when it breached its duty of good faith and fair dealing. Defendant's conduct as described herein has resulted in Plaintiff's damages that are described in this petition.

## IX. Cause of Action for Breach of Duty of Good Faith and Fair Dealing

Plaintiff incorporates all of the allegations of the preceding paragraphs for this cause of action. By its acts, omissions, failures, and conduct, AGCS has breached its common law duty of good faith and fair dealing by failing to pay Plaintiff's claim from the June 6, 2018 storm without any reasonable basis and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for its denial. AGCS has also breached its duty by unreasonably delaying payment of Plaintiff's claim from the June 6, 2018 storm and by failing to settle Plaintiff's claim from the June 6, 2018 storm because AGCS knew or should have known that it was reasonably clear that the claim was covered. AGCS' acts, omissions, failures, and conduct are the proximate cause of Plaintiff's damages.

## X. Waiver and Estoppel

AGCS has waived and is estopped from asserting any defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights or denial letters previously sent to Plaintiff.

## XI. Damages

The above-described acts, omissions, failures, and conduct of AGCS and its agents caused Plaintiff's damages that include, without limitation, the unpaid reasonable and necessary cost to properly repair the storm damage to Plaintiff's property from the June 6, 2018 storm in the amount of $911,732.45 plus the cost of any temporary repairs and any investigative and engineering fees incurred during the claims process. Plaintiff is also entitled to recover the amount of its claim plus the 11.25% per annum interest on the amount against AGCS as

damages under Section 542.060 of the Texas Insurance Code plus reasonable and necessary attorney's fees, which are to be taxed as costs of the case. All the damages described in this petition are within the jurisdictional limits of this Court.

## XII. Additional Damages

AGCS and its agents have also "knowingly" and "intentionally" committed deceptive trade practices and unfair insurance practices as those terms are defined in the applicable statutes. As a result, Plaintiff is entitled to additional damages under Section 17.50(b)(1) of the DTPA and Chapter 541 of the Texas Insurance Code.

## XIII. Exemplary Damages

AGCS' breach of its duty of good faith and fair dealing owed to Plaintiff was done intentionally and with "malice" and "gross negligence" as those terms are defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by AGCS are the type of conduct that the State of Texas protects its citizens against by the imposition of exemplary damages. Therefore, Plaintiff seeks the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish AGCS for its wrongful conduct and to set an example to deter AGCS and others similarly situated from committing similar acts in the future.

## XIV. Attorney's Fees

As a result of AGCS' conduct that is described in this petition, Plaintiff has been forced to retain the undersigned attorneys to prosecute this action and has agreed to pay reasonable attorney's fees. Plaintiff is entitled to recover these attorney's fees under Chapter 38 of the Texas Civil Practices and Remedies Code; Chapters 541 and 542 of the Texas Insurance Code; and Section 17.50 of the DTPA.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a trial by jury and also requests that Defendant be cited to appear and answer and that after the final hearing, in this case, the court award Plaintiff a judgment against Defendant for the following:

1. Actual damages, economic, additional, consequential, and exemplary damages in an amount within the jurisdictional limits of the court, as described herein;

2. Reasonable attorney's fees through trial and on appeal;

3. 11.25 percent per annum interest on the amount of Plaintiff's claim as damages pursuant to Chapter 542 of Texas Insurance Code;

4. Pre-judgment and post-judgment interest as provided by law;

5. Costs of court; and

6. Such other and further relief to which Plaintiff may be justly entitled.

    Respectfully submitted,

    *Loree & Lipscomb*
    The Terrace at Concord Park
    777 E. Sonterra Blvd, Suite 320
    San Antonio, Texas 78258
    Telephone: (210) 404-1320
    Facsimile:   (210) 404-1310

    By:  */s/ Robert W. Loree*
        Robert W. Loree
        State Bar No. 12579200
        rob@lhlawfirm.com
        Trevis R. Loree
        State Bar No. 24129235
        trevis@lhllawfirm.com

    Attorneys for Plaintiff

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Krystal Guzman on behalf of Robert Loree
Bar No. 12579200
krystal@lhllawfirm.com
Envelope ID: 71185401
Status as of 12/23/2022 1:14 PM CST

Associated Case Party: D. REYNOLDS LP

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Krystal Guzman | | krystal@lhllawfirm.com | 12/20/2022 3:13:49 PM | SENT |
| Trevis Loree | | trevis@lhllawfirm.com | 12/20/2022 3:13:49 PM | SENT |
| Stephen Fields | | stephen@lhllawfirm.com | 12/20/2022 3:13:49 PM | SENT |
| Robert WLoree | | rob@lhllawfirm.com | 12/20/2022 3:13:49 PM | SENT |