IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| D. REYNOLDS COMPANY, LLC, | § § § § § § § § § § § | |
| Plaintiff, | | |
| V. | | No. 3:23-cv-2224-E |
| AGCS MARINE INSURANCE COMPANY, | | |
| Defendant. | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff D. Reynolds Company, LLC ("Reynolds") has filed a Motion to Compel Appraisal and Abatement. *See* Dkt. No. 48.

Defendant AGCS Marine Insurance Company ("AGCS") filed a response, *see* Dkt. No. 51, and Reynolds filed a reply, *see* Dkt. No. 55.

United States District Judge Ada Brown has referred this motion to the undersigned United States Magistrate Judge for findings, conclusions, and recommendation under 28 U.S.C. § 636(b). *See* Dkt. No. 50.

For the reasons explained below, the Court should grant in part and deny in part Reynolds's Motion to Compel Appraisal and Abatement [Dkt. No. 48].

**Background**

This case concerns a claim for insurance coverage. Reynolds had an insurance policy from AGCS (the "Policy") on a commercial property – 12900 Senlac Drive, Farmers Branch, Texas 75234 (the "Property") – and reported an alleged loss from a

hailstorm. *See* Dkt. No. 1-3 at 3. In December 2022, Reynolds brought claims for breach of contract, violations of Chapter 542 of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Consumer Protection Act ("DTPA"), violations of Chapter 541 of the Texas Insurance Code, and breach of duty of good faith and fair dealing against AGCS in state court. *See id.* at 6-10.

AGCS then removed the action to this Court on February 10, 2023. *See* Dkt. No. 25 at 5. The case was originally assigned to United States District Judge Sam A. Lindsay as Case No. 3:23-cv-311. *See id.* Judge Lindsay *sua sponte* remanded the case to state court for insufficient pleading of citizenship as required for diversity jurisdiction. *See id.*

AGCS removed the action to this Court for the second time on October 6, 2023. *See* Dkt. No. 1. AGCS then filed its amended answer. *See* Dkt. No. 8.

AGCS alleges that it paid Reynolds a total of $68,225.16 under the Policy for damages to the Property. *See* Dkt. No. 52 at 2. But Reynolds alleges that the property damage exceeded $500,000. *See* Dkt. No. 48 at 1.

The Court issued its initial scheduling order, *see* Dkt. No. 23, and the parties named Richard Sparr to serve as mediator before the March 29, 2024 mediation deadline. *See* Dkt. No. 29.

The parties agreed to extend the mediation deadline to September 25, 2024 because they anticipated it would be "difficult to engage in a meaningful mediation without further factual discovery, including depositions, and expert disclosures."

Dkt. No. 31 at 2. And the parties recently agreed to further extend the mediation deadline to January 2025. *See* Dkt. No. 54 at 1.

To date, the parties have exchanged written discovery, Defendant has twice deposed Plaintiff's corporate representative, and the parties have disclosed their experts. *See* Dkt. No. 51 at 2.

Reynolds invoked appraisal in accordance with the Policy on July 31, 2024. *See* Dkt. No. 49 at 6. AGCS refused Reynolds's appraisal demand in an August 20, 2024 letter. *See* Dkt. No. 49-4. And then Reynolds filed this motion. *See* Dkt. No. 48.

## Legal Standards

When a case is removed on diversity grounds, "the Court applies Texas substantive law." *Elevia, Inc. v. Amguard Ins. Co.*, No. CV H-19-4028, 2020 WL 6192008, at *1 (S.D. Tex. May 21, 2020).

"Under Texas law, enforcement of appraisal clauses is favored. Such clauses are ubiquitous in Texas insurance contracts, and they have often helped policyholders and insurers to resolve disputes without resorting to litigation." *Meadows v. Allied Prop. & Cas. Ins. Co.*, No. 1:19-cv-2-H, 2020 WL 6122543, at *1 (N.D. Tex. Jan. 7, 2020) (cleaned up); *accord In re Universal Underwriters of Texas Ins. Co.*, 345 S.W.3d 404, 407 (Tex. 2011) ("These clauses are generally enforceable, absent illegality or waiver. …. Appraisals can provide a less expensive, more efficient alternative to litigation, and [the Texas Supreme Court] recently held that they 'should generally go forward without preemptive intervention by the courts.'" (quoting *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 895 (Tex. 2009))).

"[I]f an appraisal clause is properly invoked and one party to the contract refuses to participate in the appraisal process, a court lacks discretion not to issue an order compelling that party to participate." *Woodward v. Liberty Mut. Ins. Co.*, No. 3:09-cv-228-G, 2010 WL 1186323, at *3 (N.D. Tex. Mar. 26, 2010).

If the Court determines appraisal is appropriate, a party can still waive appraisal. *See Hart Chesnutt, LLC v. Covington Specialty Ins. Co.*, 622 F. Supp. 3d 306, 313 (N.D. Tex. 2022).

"To establish waiver of the right to appraisal, a party must demonstrate that: (1) the parties have reached an impasse; (2) after reaching an impasse, one party did not invoke appraisal within a reasonable time; and (3) the other party will suffer prejudice as a result of the delay." *Id.*

"The key to the waiver inquiry is '[t]he question of intent to waive the right.'" *Woodward*, 2010 WL 1186323, at *4 (citing *In re Acadia Ins. Co.*, 279 S.W.3d 777, 779 (Tex. App. – Amarillo 2007, no pet.). "To constitute waiver the acts relied on must be such as are reasonably calculated to induce the assured to believe that a compliance by him with the terms and requirements of the policy is not desired, or would be of no effect if performed. The acts relied on must amount to a denial of liability, or a refusal to pay the loss." *In re Universal*, 345 S.W.3d at 407.

### Analysis

Reynolds brings this motion to compel appraisal under the Policy issued by AGCS, which states:

1. **Appraisal** – If "you" and "we" do not agree on the amount of the loss or the value of covered property, either party may demand that these amounts be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

   The appraisers will then determine and state separately the amount of each loss.

   The appraisers will also determine the value of covered property items at the time of the loss, if requested.

   If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

   Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

Dkt. No. 49-1 at 49-50.

AGCS contends that Reynolds waived the right to invoke appraisal and that the Court should not abate the suit. *See* Dkt. No. 52 at 5-8.

Reynolds asserts that it did not waive its right to invoke the appraisal process. *See* Dkt. No. 49 at 2. And Reynolds requests that the Court abate the suit until appraisal is completed. *See* Dkt. No. 49 at 2.

The undersigned will address each argument in turn.

I. <u>Waiver of appraisal</u>

To establish waiver of appraisal, the parties must have 1) reached an impasse, 2) show there was unreasonable delay between the impasse and the insured requesting appraisal, and 3) show the delay was prejudicial. *See Gonzalez v. Allstate Texas Lloyds*, No. 7:19-CV-137, 2020 WL 520769, at *4 (S.D. Tex. Jan. 31, 2020).

The parties first disagree about whether there has been an impasse. Impasse is an "apparent breakdown of good-faith negotiations." *In re Universal Underwriters*, 345 S.W.3d at 409. "[B]oth parties must be aware that further negotiations would be futile," and, "[i]f one party genuinely believes negotiations to be ongoing, it cannot have intended to relinquish its right to appraisal (unless it expressly waives it)." *Id.* Disagreement about the amount of loss does not necessarily implicate an impasse. *See id.* at 408.

AGCS contends that an impasse occurred when Reynolds filed this lawsuit. *See* Dkt. No. 52 at 5-8. AGCS states that "*[n]early 20 months* after the start of this litigation, Plaintiff now seeks to change course and seeks appraisal. Such demand is wholly inconsistent with Plaintiff's conduct." *Id.* at 6.

Reynolds contends that no impasse has occurred because the parties are still engaged in further negotiations to mediate this claim. *See* Dkt. No. 49 at 9; Dkt. 56 at 4.

The undersigned agrees with Reynolds that the filing of this lawsuit was not a point of impasse because the parties have shown a willingness to continue negotiations through mediation after the suit was filed:

- The parties participated in a mediation on May 4, 2023. While the mediation session did not result in settlement, the mediator stated they would "continue working with the parties and counsel while this matter is pending in an effort to resolve this matter prior to trial." Dkt. No. 1-14 at 2.

- The parties filed their Federal Rule of Civil Procedure 26(f) report on November 20, 2023 and jointly agreed to participate in a subsequent mediation after the completion of factual discovery. *See* Dkt. No. 20 at 9.

- The parties then filed a joint report naming Richard Sparr as their agreed-upon mediator. *See* Dkt. No. 29

- The parties agreed to extend the mediation deadline to September 25, 2024 because they anticipated it would be "difficult to engage in a meaningful mediation without further factual discovery," which included conducting depositions and exchanging expert disclosures. *See* Dkt. No. 31 at 2-4.

- And, after filing of this motion, the parties agreed to further extend the mediation deadline to January 2025. *See* Dkt. No. 54 at 1.

As demonstrated by joint reports filed with the Court, Reynolds and AGCS have remained engaged in planning to participate in a mediation upon the completion of factual discovery.

Because the parties have continued to work towards conducting a "meaningful mediation," *see* Dkt. No. 31 at 2, there has not been an "apparent breakdown of good-faith negotiations." *See In re Universal*, 345 S.W.3d at 409. And, so, it cannot be said that the parties have reached the point where "further negotiations would be futile." *Id.*

The absence of an impasse alone would defeat AGCS's assertion of waiver.

But, assuming the parties reached an impasse, AGCS failed to demonstrate that it suffered prejudice from an unreasonable delay in Reynolds's appraisal demand, and, "if delay is unreasonable, the party must show it has been prejudiced by the delay." *See Gonzalez*, 2020 WL 520769, at *4.

AGCS contends that its legal rights and financial position have been prejudiced because it has been "forced to litigate this proceeding for nearly two years" and "has incurred significant expense in protecting its interests." *See* Dkt. No. 52 at 5. AGCS adds that it has spent significant time and money dealing with discovery and motion practice in state and federal court, including multiple depositions of Reynold's corporate representative. *See id.* at 8. And AGCS would be forced to incur appraisal costs on top of litigation costs. *See id.*

AGCS argues that the facts here are like another case decided by this Court, which found that a party suffered prejudice. *See Chik-Kin v. Axis Surplus Ins. Co.*, No. 3:13-cv-2804-N, 2015 WL 3466723 (N.D. Tex. Jan. 21, 2015).

But in *Chik-Kin*, discovery included 19 depositions and had already been completed. *See id.* And the plaintiff requested that the court compel appraisal one month before trial. *Id.*

Here, Reynolds's corporate representative is the only witness that has been deposed to date. *See* Dkt. No. 49 at 5. Reynolds has requested the depositions of eight individuals, who were designated by AGCS as fact or expert witnesses. *See* Dkt. No. 53 at 3. And AGCS seeks to depose both of Reynolds's experts. *See id.*

The Court granted the parties' request to extend the discovery deadline to February 28, 2025 and to continue the trial date to August 2025. *See* Dkt. No. 54. And, so, the undersigned finds that this case distinguishes itself from *Chik-Kin*.

There is no dispute that AGCS has incurred expense in designating experts and participating in litigation, some of which could have likely been avoided if appraisal was invoked earlier, and that AGCS will incur expense with appraisal. And courts have found this to be a factor in finding prejudice. *See Meadows*, 2020 WL 6122543, at *2 (finding significant expense in designating experts and participating in litigation showed prejudice).

But, while Reynolds could have invoked appraisal as soon as it knew the loss was disputed, Reynolds is not required to invoke appraisal until there is an impasse. *See In re Universal*, 345 S.W.3d at 408 ("An impasse is not the same as a

disagreement about the amount of loss. Ongoing negotiations, even when the parties disagree, do not trigger a party's obligation to demand appraisal.").

And it is inappropriate to attribute prejudice to litigation or appraisal expenses in this case where AGCS could have invoked appraisal itself. *See* Dkt. No. 49-1 at 49-50. While it is not an automatic rule, "it is difficult to see how prejudice could ever be shown when the policy, like the one here, gives both sides the same opportunity to demand appraisal. If a party senses that impasse has been reached, it can avoid prejudice by demanding an appraisal itself." *In re Universal*, 345 S.W.3d at 412.

Because AGCS could have demanded appraisal at any time, the undersigned does not find prejudice.

As explained above, no impasse has occurred. And if there was an impasse, AGCS has not been prejudiced.

Because the elements for waiver are not met, the Court should compel appraisal.

II. <u>Abatement</u>

Reynolds contends that abatement is appropriate because allowing this litigation to proceed during the appraisal process would unnecessarily waste court resources and increase litigation expenses. *See* Dkt. No. 49 at 10.

AGCS contends that abatement is not appropriate because, at this juncture, it would only serve to harm AGCS's legal rights. *See* Dkt. No. 52 at 7.

The Texas Supreme Court has explained that, where appraisal is formally demanded after litigation is initiated, "the proceedings need not be abated while the appraisal goes forward." *Devonshire Real Est. & Asset Mgmt., LP v. Am. Ins. Co.*, 3:12-cv-2199-B, 2013 WL 12124308, at *5 (N.D. Tex. Mar. 26, 2013) (citing *In re Allstate Cnty. Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002)). And, so, "courts retain discretion to abate proceedings pending appraisal." *See Hart Chesnutt*, 622 F. Supp. 3d at 316.

Texas courts have refused to order abatement when there are issues other than the amount of loss in dispute, such as coverage, and appraisal will not resolve the remaining claims. *See, e.g.*, *Devonshire*, 2013 WL 12124308, at *5 (declining to abate case pending appraisal because an appraisal would not address all the claims in the case. In this case, the plaintiffs emphasize that their "request for Appraisal does not waive any of [their] claims for bad faith or damages pursuant to the Prompt Payment of Claims statute in Chapter 542 of the Texas Insurance Code or extra contractual and bad faith damages under Chapter 541 of the Texas Insurance Code, all of which are reserved." (cleaned up)); *Martinez v. Nationwide Gen. Ins. Co.*, No. 3:19-cv-1541-X, 2020 WL 360639, at *4 (N.D. Tex. July 2, 2020) (declining to abate during appraisal when plaintiff brought extracontractual claims including negligence, breach of good faith and fair dealing, deceptive trade practices, and violations of the Texas Insurance Code); *Abbey on Preston H.O.A. v. Admiral Ins. Co.,* No. 3:13-cv-102-N, 2013 WL 12143827 (N.D. Tex. May 30, 2013) (finding when both liability and damages are in dispute abatement was not appropriate).

Here, Reynolds brings claims for breach of contract, violations of Chapter 542 of the Texas Insurance Code, violations of the Texas DTPA, violations of Chapter 541 of the Texas Insurance Code, and breach of duty of good faith and fair dealing. Dkt. No. 1-3 at 6-10.

Reynolds alleges that AGCS violated the Texas Insurance Code by engaging in the following unfair insurance practices:

- A. Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case;

- B. Engaging in unfair claims settlement practices;

- C. Misrepresenting to Plaintiff pertinent facts or policy provisions relating to the coverage at issue;

- D. Not attempting in good faith to effectuate prompt, fair, and equitable settlement of Plaintiff's claim on which Defendant's liability had become reasonably clear;

- E. Failing to affirm or deny coverage of Plaintiff's claim within reasonable time; and

- F. Refusing to properly pay Plaintiff's claim without conducting reasonable investigation with respect to the claim and by conducting sham investigation that ignored and excluded damage from the subject storm.

*Id.* at 10-11.

And, so, the amount of actual damages is one of several issues in dispute between the parties.

Because Reynolds brings extracontractual claims that will not be resolved by appraisal, the Court should not abate the case during appraisal.

## Conclusion

The Court should grant in part and deny in part Plaintiff's Motion to Compel Appraisal and Abatement [Dkt. No. 48].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 18, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE